***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence modifies and affirms the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner and in a Pre-Trial Agreement as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant.
3. Defendant is duly self-insured.
4. Plaintiff was last injuriously exposed to asbestos during plaintiff's employment with defendant. Plaintiff was exposed to asbestos for 30 working days within a seven month period as required by N.C. Gen. Stat. § 97-57.
5. Plaintiff does suffer from an occupational disease, asbestosis. This diagnosis has been confirmed by Dennis Darcey, M.D., on 9 December 1997. A member of the North Carolina Occupational Disease Panel has confirmed this diagnosis. Plaintiff's medical records have been stipulated into evidence.
6. Plaintiff contends he is entitled to a 10% penalty pursuant to the provisions of N.C. Gen. Stat. § 97-12. Defendant agrees that should the claim be found compensable, defendant shall pay an amount of 5% of all compensation, exclusive of medical compensation.
7. Should this case be determined to be compensable, language may be included to remove plaintiff from further exposure to asbestos pursuant to N.C. Gen. Stat. § 97-61.5(b).
8. Should N.C. Gen. Stat. § 97-60 through N.C. Gen. Stat. §97-61.7 be determined to be unconstitutional, additional testimony could be offered by the parties on the issues of wage loss, earning capacity and/or disability.
9. The medical records by the following physicians were introduced into evidence without objection by the parties:
a. Dr. Dennis Darcey
b. Dr. Fred M. Dula
c. Dr. Allen Hayes
d. Dr. James Johnson
e. Dr. Phillip Lucas
f. Dr. Stephen D. Proctor
 ***********
Based upon all the competent evidence adduced at the hearing and the reasonable inferences therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. This matter came on for hearing before the Commission after plaintiff's first examination and medical reports establishing that he has asbestosis. Plaintiff retired from employment with defendant on 1 December 1998, approximately one year following the date of his diagnosis of asbestosis.
2. Plaintiff has contracted asbestosis and asbestosis-related pleural disease as a result of his injurious exposure to the hazards of asbestos while employed by defendant, Weyerhaeuser Company.
3. Plaintiff was employed by defendant at its Plymouth facility from 5 October 1965 to 1 December 1998.
4. Plaintiff held several job titles while employed by defendant. He has worked all over the plant as a pipe fitter, an A-class pipe fitter, a welder and as a millwright. At the time plaintiff retired in 1998, he held the job title of senior mechanic. Throughout his employment, plaintiff was exposed to asbestos at various places throughout the plant on a regular basis.
5. Plaintiff was exposed to asbestos when he removed asbestos insulation by knocking it off with a hammer. He also ground down and chipped off pieces of asbestos gaskets. While he was performing these job duties the air would become so dusty around him that it would take on a gray and foggy appearance. This dust covered plaintiff's clothes with particles from the asbestos insulation.
6. Based upon the stipulated description of plaintiff's job duties while employed by defendant and other evidence submitted, the Full Commission finds as fact that plaintiff was exposed to asbestos containing materials on a regular basis for more than 30 working days or parts thereof inside of seven consecutive months from 1965 until his last date of employment on 1 December 1998.
7. Plaintiff was not provided with a respirator to protect against his exposure to asbestos.
8. Defendant has admitted plaintiff does suffer from asbestosis, an occupational disease. This diagnosis has been confirmed through medical documentation from Dennis Darcey, M.D., Fred M. Dula, M.D., Allen Hayes, M.D., James Johnson, M.D., Phillip H. Lucas, M.D., and Stephen D. Proctor, M.D.
9. Plaintiff presented to Dr. Dennis Darcey of the Division of Occupational Environmental Medicine at Duke University on 9 December 1997. Dr. Darcey took an occupational history from plaintiff which included his work as a pipe fitter, millwright and welder while working for defendant since 1965. Plaintiff stated he believes he was exposed to asbestos dust during "rip outs" of asbestos insulation during construction and repair projects. He recalled white clouds of insulation dust in his work made worse by the fact that an air hose was used to blow down dust off the pipe insulation. Plaintiff also described using a grinding machine as part of his job duties to remove asbestos containing gaskets that were on pipe flanges. He recalls that up until the last 5 or 6 years of his employment, respirators were not worn by anyone when working around any of the asbestos insulation materials. Plaintiff also disclosed that he does not currently smoke, but smoked for approximately 5 years, one-half pack per day as a younger man.
10. It was the opinion of Dr. Darcey that plaintiff suffers from mild early asbestosis and asbestos related pleural changes. His conclusion was based on the history of exposure to asbestos with adequate latency to develop asbestosis, an ILO chest x-ray and B-read and a high resolution CT scan of the chest showing bilateral pleural plaque consistent with asbestosis and interstitial changes that were consistent with asbestosis. Dr. Darcey was unable to determine plaintiff's respiratory impairment due to the inability of plaintiff to perform all maneuvers, but he noted that plaintiff's diffusion capacity was slightly reduced.
11. Dr. Darcey, as part of his medical report, recommended that plaintiff undergo annual monitoring for progression of asbestos related disease including pulmonary function and chest x-ray. He also recommended that plaintiff avoid further exposure to asbestos dust. Finally, Dr. Darcey opined that in addition to plaintiff's increased risk of developing asbestosis, he was and remains at an increased risk of developing lung cancer and mesothelioma, as opposed to those non-exposed individuals, and that medical monitoring is recommended.
12. Plaintiff's CT scan and chest x-ray dated 19 July 1997, were interpreted by Dr. Fred M. Dula of Piedmont Radiology in Salisbury, a radiologist and B-reader. In the opinion of Dr. Dula, there were present bilateral pleural plaques and interstitial changes consisting of short, thickened interlobar lines extending to the pleural surfaces and parenchymal bands, in the non-dependent portions of the lung bases on the CT scan. Dr. Dula further noted that interstitial changes were seen in the lower halves of both plaintiff's lungs consisting of irregular linear opacities. He noted that there was pleural thickening, right more than left, and a probable plaque was seen on left hemidiaphragm on the chest x-ray. It was his overall impression that both plaintiff's CT scan and chest x-ray showed interstitial and pleural changes consistent with asbestosis.
13. It was the opinion of Dr. Phillip H. Lucas, a NIOSH B-reader who also evaluated plaintiff's chest film, that there were present bilateral pleural and interstitial fibrotic changes consistent with asbestosis in a patient who has had an adequate exposure history and latency period.
14. Dr. Allen Hayes of Raleigh Internal Medicine also reviewed the 19 July 1997 chest film and indicated thereon that there were parenchymal and pleural abnormalities consistent with pneumoconiosis present.
15. Dr. James Johnson of Piedmont Radiology in Salisbury, a B-reader, reviewed plaintiff's chest x-ray and concluded there were both parenchymal and pleural changes present consistent with a pneumoconiosis.
16. On 12 January 1999, plaintiff was examined by Dr. Stephen D. Proctor, a Member of the North Carolina Occupational Disease Panel. Plaintiff advised Dr. Proctor that he had smoked about a one half pack of cigarettes per day for 5 years, but quit smoking over 30 years prior to the examination. Plaintiff also gave Dr. Proctor his work history which is included in Dr. Proctor's report. Plaintiff stated that he worked for defendant since 1965 and his job duties included pipe fitting and removing asbestos-containing insulation from pipes with a hammer. Plaintiff reported that asbestos was frequently in the air at his work place and all over his clothing. Plaintiff's duties also included grinding asbestos-containing gaskets off pipes and replacing them with new gaskets. Further, plaintiff reported working in close proximity to individuals who were using compressed air to clean asbestos off machines. He also worked as a welder and had similar exposure in this capacity. Finally, plaintiff also worked as a millwright and changed brake shoes and clutches that contained asbestos in this capacity.
17. Dr. Proctor reported that plaintiff's chest CT showed multiple granulomas in both lungs, bilateral increased interstitial markings and bilateral pleural plaque formation. Dr. Proctor stated that he believed that plaintiff has asbestosis and pleural plaques related to asbestos exposure based on the history, physical examination, pulmonary function tests, and radiographic studies.
18. Dr. Proctor also reports that under the American Medical Association Classification Scheme for Respiratory Impairment, plaintiff would be rated Class 4 (50-100%, severe impairment).
19. Plaintiff suffers from asbestos related pleural disease and asbestosis as a result of the many years of exposure to the hazards of asbestos dust while employed by defendant. Plaintiff's pulmonary impairment is permanent and is likely to progress. Plaintiff would benefit from medical monitoring, evaluation and some treatment in the future as a result of his asbestosis and asbestos related pleural disease. Further, medical monitoring is reasonably necessary due to his increased risk of developing lung and other asbestos related cancers.
20. Although plaintiff had retired from employment at the time the Deputy Commissioner's 31 January 2000 Order of Removal was issued, plaintiff was employed by defendant on 9 December 1997, the date he was diagnosed with asbestosis. There is insufficient evidence at this time to determine whether plaintiff's decision to retire was based upon his own desire to remove himself from further exposure to asbestos which would constitute a "constructive removal" from the hazards of asbestos. Based upon the evidence of record, the Full Commission is required to issue an Order of Removal for plaintiff, pursuant to N.C. Gen. Stat. § 97-61.5.
21. Plaintiff's average weekly wage was sufficient to entitle plaintiff to the maximum workers' compensation rate of $532.00 during the year 1997, in which plaintiff retired from defendant's employ.
22. The provisions of N.C. Gen. Stat. §§ 97-60 et seq. are not unconstitutional.
23. Plaintiff seeks attorney's fees from defendant in this case on the grounds that defendant defended this claim without reasonable ground. This issue should be reserved for subsequent determination at the final hearing in this matter.
 ***********
Based upon the stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff contracted the occupational diseases of asbestosis and asbestos related pleural disease as a result of his employment with defendant. N.C. Gen. Stat. § 97-53(24) and § 97-62.
2. Plaintiff was last injuriously exposed to the hazards of asbestos dust while employed by defendant, and for as much as 30 working days or parts thereof, within seven consecutive months, which exposure proximately augmented his asbestosis. N.C. Gen. Stat. § 97-57; Clark v. ITTGrinnell Industrial Piping, Inc., 141 N.C. App. 417, 539 S.E.2d 369
(2000); Haynes v. Feldspar Producing Co., 222 N.C. 163, 22 S.E.2d 275
(1942); Barber v. Babcock Wilcox Construction Company,101 N.C. App. 564, 400 S.E.2d 735 (1991).
3. N.C. Gen. Stat. § 97-61.5 provides in pertinent part that following a first hearing determination by the Industrial Commission that a claimant has asbestosis, based upon either medical evidence or by agreement of the parties, the Commission "shall by order remove the employee from any occupation which exposes him to the hazards of asbestosis . . ." and that upon removal the employee shall be entitled to "weekly compensation equal to sixty-six and two-thirds percent of his average weekly wages . . . which compensation shall continue for a period of 104 weeks." In the instant case, the parties have stipulated that plaintiff has asbestosis; that he was last injuriously exposed to asbestos during his employment with defendant and that the exposure was for 30 working days within a seven month period; and that should plaintiff be awarded compensation, an Order of Removal is appropriate to protect plaintiff from further exposure. Accordingly, the Commission hereby issues an Order of Removal. Id.
4. While it has been determined that a retiree who retired prior to receiving a diagnosis of asbestosis is not entitled to an order of removal and the subsequent award because he no longer faces the possibility of exposure, see Austin v. General Tire, 354 N.C. 344,553 S.E.2d 680 (2001), in this case plaintiff did not retire until approximately one year after being diagnosed. It is not clear from the evidence whether plaintiff's decision to retire was based on his asbestosis or asbestosis-related pleural disease, or whether plaintiff faced the possibility of further exposure to asbestosis in future employment. It has long been recognized that the purpose of the order of removal is not only to stop continuing exposure of the employee to asbestos fibers, but also to ensure that the employee who continues or returns to work avoids any future exposure. See Roberts v. SoutheasternMagnesia and Asbestos Co., 61 N.C. App. 706, 301 S.E.2d 742 (1983). It has also long been recognized that the award of 104 weeks of compensation has the additional purpose to compensate the employee for the incurable nature of the disease. Honeycutt v. Carolina Asbestos Co., 235 N.C. 471,70 S.E.2d 426 (1952).
5. Pursuant to N.C. Gen. Stat. § 97-61.5, the weekly amount of plaintiff's 104 weeks of compensation is to be based upon his "average weekly wages before removal from the industry, but no more than the amount established annually to be effective October 1 as provided in G.S. 97-29. . . ." Plaintiff's wages were sufficient to entitle him to the maximum compensation rate permitted under the Act for the year 1998, the year plaintiff retired. Therefore, plaintiff is entitled to 104 weeks of compensation as a result of his diagnosis of asbestosis at the weekly benefit rate of $532.00. N.C. Gen. Stat. § 97-61.5; Roberts v.Southeastern Magnesia and Asbestos Co., 61 N.C. App. 706, 301 S.E.2d 742
(1983).
6. The issue of the constitutionality of N.G. Gen. Stat. §§ 97-60 etseq. has been raised by defendant and ruled upon by the North Carolina Court of Appeals. In Jones v. Weyerhaeuser Co., 141 N.C. App. 482,539 S.E.2d 380 (2000), disc. review denied, 353 N.C. 525, 549 S.E.2d 858
(2001), and in Clark v. ITT Grinnell Industrial Piping, Inc.,141 N.C. App. 417, 539 S.E.2d 369 (2000), the Court ruled unanimously that the provisions of N.C. Gen. Stat. § 97-61.5 are not unconstitutional.
7. Plaintiff is entitled to have defendant pay for such medical expenses incurred or to be incurred as a result of plaintiff's asbestos related pleural disease and asbestosis as may be required to monitor, provide relief, effect a cure or lessen plaintiff's period of disability. N.C. Gen. Stat. § 97-25, § 97-59.
8. Plaintiff is entitled to undergo subsequent examinations as provided by law, pursuant to the provisions of N.C. Gen. Stat. §§ 97-61.1 etseq. and is further entitled to any additional benefits due to plaintiff which shall be determined after additional examinations and hearings.
9. By agreement of the parties, plaintiff is entitled to recover a penalty of 5% of any compensation due him exclusive of medical compensation. By further agreement of the parties, defendant shall be subjected to a late penalty pursuant to N.C. Gen. Stat. § 97-18.
10. Plaintiff's claim for attorney's fees from defendant on the ground that defendant unreasonably defended this claim pursuant to N.C. Gen. Stat. § 97-88.1 is hereby held in abeyance until the final award is issued in this claim.
11. This claim must be remanded to a deputy commissioner for further hearing (if necessary) following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiff's eligibility for further indemnity compensation under the Act beyond the 104 weeks awarded herein and any other issues in controversy are hereby held in abeyance pending the outcome of further hearings.
 *********** ORDER OF REMOVAL
Plaintiff is hereby ordered to be removed from any occupation which further exposes him to the hazards of asbestos. N.C. Gen. Stat. §97-61.5(b).
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission makes the following:
 AWARD
1. Defendant shall pay to plaintiff compensation for 104 weeks as a result of his contraction of asbestosis, and asbestos related pleural disease while employed by defendant, at a weekly rate of $532.00. Said sum shall be paid in a lump sum to plaintiff without commutation subject to an award of attorney's fee.
2. Defendant shall pay an additional weekly sum of 5% of the weekly compensation awarded in Paragraph 1 above to plaintiff which shall also be paid in a lump sum. As to any future weekly compensation or other compensation due, defendant shall increase the amount of such weekly compensation and/or lump sum compensation awarded, by 5%. As per agreement of the parties, defendant shall be subjected to a late penalty pursuant to N.C. Gen. Stat. § 97-18.
3. Defendant shall pay all medical expenses incurred or to be incurred when bills for the same have been approved, in accordance with the provisions of the Act.
4. Plaintiff shall undergo additional examinations as provided by law.
5. A reasonable attorney's fee of 25% of the compensation due plaintiff as was awarded in paragraphs 1 and 2 above is approved for plaintiff's counsel. Twenty-five percent of the lump sum due plaintiff shall be deducted from that sum and paid directly to his counsel.
6. Defendant shall pay the costs of this proceeding.
 *********** ORDER REMANDING
This claim is hereby remanded to a deputy commissioner for further hearing (if necessary) following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiff's eligibility for further indemnity compensation under the Act beyond the 104 weeks awarded herein and any other issues in controversy are hereby held in abeyance pending the outcome of further hearings.
This the ___ day of October, 2002.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER